Case 319-0712, in re the marriage of Chance Barlow and Amy Barlow. Mr. Reva? Yes, your honor. Can you hear me okay? Um, not real well. Okay, well I'm gonna, I'll talk as, we've had a little bit of problem, I'll try to talk as loud as I can. Can you hear me now? A little better? Let me turn on my volume a little more. Yeah, I'm having trouble hearing him too. I don't think it's just your volume Tom. Is Joe there? Okay. Okay. When we are case comes up you can come in. Okay. Okay. Mr Reva, why don't you just go ahead. I'll talk as loud as I can and as slowly as I can hopefully that'll make it as audible as possible. That's all I can do. May it please the court. Everybody ready for me then, and counsel. This is Travis, this is Smith. Yeah, I can hear him. Just barely. Mr Reva, what are you talking into where's your microphone. I'm talking right into my computer. Is this better. Okay, let me again I'm going to be as loud as I can, and as brief as I can. So, if I may. This is Jeff Reva RYVA I represent Charles Barlow he's the appellant in this case. And what we have here, I guess first of all I'm going to stand on my brief on issue number three and focus on the other four, four points that I make. Normally I would focus initially on the noble review issues because I think those are always ones that have the more favorable chances for an outcome for the appellant, but I'd be remiss by starting there because those three issues pertain more to what would be our request to have a new hearing with proper and all the evidence heard and weighed and balanced. The first issue we raise has to do with the, the issue of Amy Barlow's income. And if the courts, the courts should recall from the briefs that what we had here is the trial court initially heard the whole trial and then denied maintenance across the board to Amy, then a motion to reconsider was filed, and the courts took the matter and without changing any analysis on the statutory factors, other than income said that she had goofed and made a recalculation of Amy's income and with that in mind, then awarded the $900 almost in maintenance. So, but actually what the record shows is that Amy's a beautician and the, her bank accounts that she used for herself were just hers, chance had nothing to do with those inputting or outputting. She also didn't claim tips on her taxes, also didn't include income she made on markup of products. And where we think the key point in the, in the evidence was that Amy did not use a bank account or credit cards to withdraw cash. And in fact, she didn't use credit cards to pay bills, she always used her cash, and Amy always maintained a positive balances in her accounts. And where our focus is on the first issue about whether this court should just outright reverse and deny maintenance was, if you take a look at the case, Amy never sought any temporary maintenance for the entire length of time that the case was proceeding in circuit court. And that of course would have been at the time where she would not have been awarded any marital property yet because the court hadn't made that disposition yet. And during that period of time, Amy purchased a new house, she always had positive balances in her accounts. And our point was that when you looked at Amy's affidavit that she set out, you know, the court format for people that everyone uses, you had about $67,000 of expenses. Now, if she's meeting those expenses without using credit cards, as she said, she's not running negative account balances. She's basically meeting her expenses. We believe that that showed that when the judge came up with a much lower figure that she really would have been making enough to net to pay the $67,000 of expenses. Making matters, I think, even worse was when we look at the maintenance award that was ultimately entered, Amy also received $57,000 in cash, $21,000 pension, most of her IRA, and half of Chance's money. So on our first issue, we don't think that it properly reviewed that the case of warranted any maintenance at all. And on that point, we'd ask the court to reverse our remand. Now, the other three issues... Mr. Reaven, let me ask you this one question. Yes, sir. What the appellee's income is, it's a question of fact, isn't it? Well, it is a question of fact, except that you have to apply the right legal standard to it. And that's kind of where I dovetail into my second argument. I mean, I agree. Yes, it's a trial fact issue to determine someone's income, but the cases like the Cooper case, I actually had the Burdess case, which came out this summer, where I'm representing a poor lady and we tried to get some relief for her. The law seems to be developing in this area about how the interplay is between maintenance and child support, all these new statutes, and everyone's still struggling with a lot of the terms and how to apply everything. So I agree it's a factual issue, but there's a legal component to it, I guess, what I would say. May I proceed? Yes, please. Okay, so what that kind of dovetails into the second issue, and that is, even if there's not grounds for an outright reversal, the Cooper case, which this court had, I think it was 2019, and the Burdess case that I was involved in, seem both to suggest that measuring income by what one spends is a proper way to formulate an income analysis for purposes of maintenance and child support. Now, Justice Schmidt, as I noted, did dissent in that Cooper case. Well, I lost that. So that's why I have to say that I'm going to go with the argument that prevailed, and it seemed to me it's a clear reading in that case that when the trial judge was affirmed, what the trial judge did was take a look at the guy's affidavit. The man had the X number of dollars of spending, and there really was no evidence that he went into the hole, so to speak. So the court said, hey, if that's what you spend, that's what you must earn. And of course, this is the classic issue that all divorce family law lawyers tell people when you're working on your affidavit, because the inclination, of course, is to pay out your expenses. But I think the courts are recognizing that if you do that, you may have something happen where the court concludes, well, if you have those large expenses, but you're not going in the hole, you must have the money from some source to pay them. So my point there is that Cooper says that measuring income by what one spends is proper, and the trial judge rejected the testimony of the opinion witness on grounds that it was speculative. Well, it wasn't speculative. It was basically based on that very issue drawn from the Cooper case. Now, issue four, Cooper also rejects the use of the guidelines completely in a non-guidelines case. Recall, this is a non-guidelines case. Chance, as a trial from a prior relationship, counsel admits in the trial court order specifically said that she did apply, or at least mentioned the guidelines, and we don't think that that's proper. There should be a remand, and I go to what might be a technical point, and that is, you know, if something is a regular maintenance award, it would be $900. Down to $899.52. Seems like it had a calculation made to it. My final argument is on this issue when we get into how the overlay is between the maintenance and child support statutes. The court used the individualized amount from the child support statutes, but if you take a look through my statutory analysis, it appears that since we're in a non-guidelines case, my point is that there's no reference that gets brought into the non-guidelines maintenance-based calculation that has anything to do with individualized or standard amounts. That's a child support issue that only is brought into the maintenance statute or a guidelines case by the statutes that I cite. That really is a brief summary. I think these are all certainly the first ones, much more important to chance than to the bench and barber. I think these other issues, as they continue to percolate through the courts on how you, judges, draw upon the Cooper case, which seems to clearly say that, you know, you don't mix apples and oranges. If a statute on one only talks about something, you don't engraft language from one statute on to the other. That, I think, is the underlying underpinnings of your Cooper case. So, unless the court has any questions, which I'd be certainly happy to answer, I would ask, I guess, first for an outright reversal or at least a remand to have a full hearing on maintenance where the judge considers the income versus expense argument that basically says that if someone has expenses, runs positive balances, they must be making the same or more than their expenses. And the guidelines issue, and then my final point is, I guess, the final alternative is if you affirm the other issues that we still need to have a remand to sort out this individualized and standardized deduction because I don't think there was any evidence put on as to why the court used the standardized deduction other than the point was that Amy was self-employed, but I don't see anything in the law that supports that as a factor. So, if anyone has any questions, if not, I will defer to counsel. Justice Schmitt, any questions? Well, yeah, and I was thinking about asking this question to Ms. Zaratella, but let me ask you also, Mr. Riva. I'm trying to figure out what evidence was, in some respects, in front of the trial court, and I guess what's confusing me is she said, the trial judge said, well, it didn't consider expenses, the appellee's expenses. Involving creating income the first time around, and my issue is what I'm trying to understand is I can't imagine anybody who's self-employed filing a tax return that doesn't include the costs of producing that income as a deduction against the gross receipts. And so, that wasn't included in the tax returns? Well, I'm not totally sure about that, to tell you the truth, because I think the record is somewhat murky, and not to bail on your question, it was not the trial attorney, I've just been in the case for appeal, but if I can clarify, we don't really have any trouble with the judge stating the obvious, which is Mr. Riva, I'm just asking about the, I'm just asking about tax returns. That's what I mean. I'm not quarreling with whether expenses to generate income are proper business expenses, but my argument is when she lists in her affidavit what her personal expenses are, that they're so high that those are the ones that when you compare that to what she says in her affidavit, it can't be. She had to be making more money than she said. All right. Judge Smith, anything more? No, no, nothing for me, Tom. Nothing, Bob. All right, Mr. Riva, thank you very much. Thank you, guys. Ms. Serratella. Good morning, Your Honor. May it please the court and counsel. I know you guys are very busy. So in the interest of judicial economy, I'll rest on my brief unless anyone has specific questions. Well, Leah, I've got a couple. One is the first time the trial judge was looking at maintenance. Your client's expenses were in creating income as a self-employed person. I used to be a real lawyer, had a small law firm and filed tax returns that showed the cost of producing whatever gross receipts I had. And so I'm just wondering, did your client's tax returns show that also? I do not have those in front of me. I'm going to take an educated guess and say yes. But her business expenses are also listed on the bottom of page four of her financial affidavits, which I attached to my brief. They're at the bottom of page four and top of page five. Okay. And the next question I want to ask you is in ruling on this, Judge Patton made several points. It seems to me he made the point several times about the appellant benefiting during the marriage of a little slight of hand on reporting income to the IRS. And so my question is, what does that have to do with the price of tomatoes and the maintenance? Well, I think the court brought that up because the defendant appellant in the trial kept bringing it up and accusing the other party, my client, of making a lot of money in cash and not reporting it. My client admitted, yes, she did make cash every year and averaged it out anywhere between five to seven thousand dollars perhaps per year in tips or people paying by cash. And we testified, did not hide that. I think they keep bringing it up because he wants to claim, no, it was some substantially bigger number, but yet there was never any evidence of that. So I think he was trying to increase her income with the hopes that it wouldn't be a maintenance case. So I think the court was just establishing she didn't find evidence of that, that my client testified truthfully, admitted that she did make cash and the parties did not declare that on their tax return. And that was kind of where I think that ended. OK, thank you. Yep. Thank you. Justice Schroeder, any questions? I have no questions. And I have no questions. Thank you very much. Thank you, Mr. Mr. Yes. Since there's really only one point to make and that was the answer to the question about whether your computer. Okay, here we go. Right. My point there simply is that with respect to this trial judge noting that chance was the one benefiting from the reporting income. I mean, basically, they both did. But if anything. I mean, chances is not paying maintenance on money that I think. You know, I think it's been admitted has been not reported on taxes, he ends up getting the worst both worlds. It's not really that he just benefits that they both benefit or anything. She benefits because it's like if it disappears. I guess the tax benefit of not including in her income, but it reduces her income for the calculation. And she ends up. She's the one that gets the benefit. That's all I have to say about that. Thank you. Thank you, Mr. Thank you both for your argument today. Thank you, Your Honors. Stay safe, everyone. This matter under advisement.